IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**BERT A. KETCHERSID,**

    **Plaintiff,**

**v.**                           **CIVIL ACTION NO. 2:06-cv-00971**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security[1],**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the court are the parties' cross-motions for judgment on the pleadings.

Plaintiff, Bert A. Ketchersid (hereinafter referred to as "Claimant"), protectively filed applications for SSI and DIB on

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Under Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as the defendant in this action.

March 2, 2004, alleging disability as of June 15, 2003, due to anxiety, a learning disability, and injuries to his head, lower back, and left leg. (Tr. at 72-75, 86, 334-37.)  The claims were denied initially and upon reconsideration. (Tr. at 48-50, 57-59, 340-42, 346-48.)  On October 6, 2004, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 60.)  The hearing was held on January 31, 2006, before the Honorable Theodore Burock. (Tr. at 353-89.) By decision dated August 9, 2006, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 14-27.)  The ALJ's decision became the final decision of the Commissioner on September 28, 2006, when the Appeals Council denied Claimant's request for review. (Tr. at 7-9.)  On November 20, 2006, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R.

§§ 404.1520, 416.920 (2006). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2006). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has

3

the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 16.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of "a back impairment, borderline intelligence, and a psychological impairment carrying various diagnoses." (Tr. at 16.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 17.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 18.) As a result, Claimant cannot return to his past relevant work. (Tr. at 25.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as assembler, sorter/inspector, hand packer, and cleaner (e.g., housekeeper and janitor), which exist in significant numbers in the national economy. (Tr. at 26.) On this basis, benefits were denied. (Tr. at 27.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was

4

defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was thirty-seven years old at the time of the administrative hearing. (Tr. at 358.) Claimant graduated from high school.[2] (Tr. at 359.) In the past, he worked as a soda tank filler and assembly line worker. (Tr. at 87, 115, 383.)

---

[2] He participated in special education classes from fourth grade through twelfth grade. (Tr. at 375.)

The Medical Record

The court has reviewed the entire record, including the medical evidence of record, and finds that the record contains substantial evidence which supports the ALJ's decision. The medical evidence is discussed below as necessary.

On November 5, 2003, Claimant was involved in a motor vehicle accident. (Tr. at 198.) He sought treatment in the emergency room at Logan General Hospital where he complained of injuries to his back and rib cage. (Tr. at 198.) An x-ray of Claimant's lumbar spine revealed degenerative changes to the lumbar spine, but no fracture, dislocation, or subluxation. (Tr. at 201.) Bilateral rib x-rays showed "no acute displaced rib fractures." Id. Claimant was diagnosed with lumbar sprain and contusion of the rib cage. (Tr. at 199.)

On November 13, 2003, a General Physical form was completed by certified family nurse practitioner at the request of the West Virginia Department of Health and Human Resources. (Tr. at 140-41.) The diagnosis was lumbosacral sprain. (Tr. at 141.)

From November 20, 2003, to February 21, 2006, Claimant received treatment from Katherine A. Hoover, M.D. and her colleagues at Comprehensive Care Center, Mountain Medical Care Center, and Williamson Wellness Center. (Tr. at 203-212, 300-327.) During the initial visit, Claimant reported back pain resulting from a motorcycle accident in June 2003. (Tr. at 212.) Dr. Hoover

diagnosed lumbar sprain, anxiety, and refractory pain and prescribed Lortab and Xanax. Id.  On February 13, 2004, Dr. Hoover added Soma to Claimant's prescription medications. (Tr. at 209.) On February 2, 2005, D. Kiser, DO prescribed Lorcet. (Tr. at 313.) Claimant repeatedly reported that his medications were helping. (Tr. at 205-06, 311-13, 321.) On July 5, 2005, Dr. Hoover found "lumbar spasm" and prescribed a Tens unit. (Tr. at 308.)

From January 13, 2004, to July 13, 2004, Claimant sought treatment from A. C. Velasquez, M.D., a neurological surgeon. (Tr. at 173-81.) During a physical examination on January 13, 2004, Dr. Velasquez noted slight tenderness at the upper lumbar junction and upper lumbar area. (Tr. at 180.) Ranges of motion on bending forward, backward, and sideways were 50 degrees, five degrees, and 40 degrees, respectively. Id.  Claimant walked on toes and heels without difficulty. Id.  Straight leg raising was to 75 degrees on both sides with pain in the lumbar area. Id.  Dr. Velasquez diagnosed upper lumbar muscle strain and prescribed Lortab 5 mg. (Tr. at 181.) Over the course of treatment, Claimant's straight leg raising increased to 80 degrees on both sides. (Tr. at 173-77.)

On May 14, 2004, Lisa C. Tate, M.A. conducted a psychological evaluation at the request of the State disability determination service ("DDS") (Tr. at 142-48.) She diagnosed borderline intellectual functioning based on results of intelligence tests administered to Claimant and opined that his symptoms were "not

7

significant enough to warrant a diagnosis of an anxiety disorder." (Tr. at 145-46.)

On June 14, 2004, James K. Egnor, M.D. completed a Physical Residual Functional Capacity Assessment at the request of DDS. (Tr. at 149-57.) Dr. Egnor found Claimant capable of light work with the postural limitations of occasionally climbing, balancing, stooping, kneeling, crouching, and crawling and the need to avoid concentrated exposure to extreme cold and vibration. (Tr. at 151, 153.)

On June 23, 2004, Mary H. Hoback Clark, M.D. completed a Psychiatric Review Technique form at the request of DDS. (Tr. at 158-72.) Dr. Clark concluded that Claimant suffered from non-severe borderline intellectual functioning. (Tr. at 158-59.) She rated as "mild" Claimant's limitations in the areas of activities of daily living, social functioning, and maintaining concentration, persistence, and pace and found no episodes of decompensation. (Tr. at 168.)

On August 4, 2004, Claimant's chest, thoracic spine, and lumbar spine were x-rayed. (Tr. at 187-88.) The chest x-ray showed lung fields clear of active disease and unremarkable cardiac size and configuration. (Tr. at 187.) The thoracic spine x-ray showed normal disc spaces, and no destructive or degenerative process. Id. The lumbar spine x-ray revealed no fracture. Id.

On September 9, 2004, A. Rafael Gomez, M.D. completed a

Physical Residual Functional Capacity Assessment at the request of DDS. (Tr. at 213-221.) He found Claimant capable of light work with the postural limitations of occasionally climbing, balancing, stooping, kneeling, crouching, and crawling and the need to avoid concentrated exposure to hazards. (Tr. at 214-15, 217.) Dr. Gomez observed that Claimant "is partially credible. His restrictions are out of proportion to the physical findings." (Tr. at 218.)

On September 23, 2004, Jeffrey L. Harlow, Ph.D. completed a Psychiatric Review Technique from at the request of DDS. (Tr. at 222-36.) He opined that Claimant's mental impairments were not severe based upon the criteria for 12.02 Organic Mental Disorders and 12.06 Anxiety-Related Disorders. (Tr. at 222.) Dr. Harlow found no limitations in activities of daily living or social functioning, mild difficulty in maintaining concentration, persistence, and pace, and no episodes of decompensation. (Tr. at 232.)

October 13, 2004, Claimant sought treatment for depression in the emergency room of St. Mary's Medical Center. (Tr. at 237-50.)

On October 14, 2004, a CT head scan was performed. (Tr. at 251.) The radiology report shows "[n]o hydrocephalus or other acute finding." Id.

April 29, 2005, to September 20, 2005, Claimant participated in therapy sessions with Angel Glick, M.A. and Nicole Smith, M.A. at Psychological Associates of Logan, Inc. (Tr. at 259-79.) The psychologists' notes indicate the diagnoses of Antisocial

Personality Disorder, Opioid Dependence, Cocaine Abuse, and Schizoaffective Disorder, Bipolar Type. (Tr. at 260.)

The record contains the treatment notes of Antonio Diaz, Jr., M.D., who apparently saw Claimant five times from August 11, 2005, to January 18, 2006. (Tr. at 328-33.) Unfortunately, the court finds these notes to be largely illegible, except for the impression of Psychotic Disorder NOS and Depressive Disorder NOS and the prescription of Seroquel and Lamictal in August 2005. (Tr. at 333.)

On October 14, 2005, Ms Smith completed an Assessment to Do Work Related Activity form. (Tr. at 280-81.) She rated Claimant's abilities in making occupational adjustments and personal social adjustments predominately as "poor." Id. She found Claimant had "fair" capacities with regard to simple and detailed job instructions, but a "poor" capacity to understand, remember, and carry out complex job instructions. (Tr. at 280.)

Eric Johnson, Ph.D., a psychologist, evaluated Claimant at the request of his attorney. (Tr. at 282.) He prepared a psychological report and a Medical Assessment of Ability to do Work-Related Activities (Mental) form, both dated November 9, 2005. (Tr. at 282-88.) Dr. Johnson's diagnoses were bipolar disorder with psychotic features, history of polysubstance abuse, antisocial personality disorder, borderline intellectual functioning, and a Global

Assessment of Functioning ("GAF") of 45.[3] (Tr. at 285.) He rated Claimant's work-related abilities predominately as "fair" and "poor." (Tr. at 287-88.)

On January 24, 2006, Katherine Hoover, M.D. completed two forms at the request of Claimant's attorney: a Medical Report from Treating Physician and a Physical Capacities Assessment. (Tr. at 289-97.) Dr. Hoover diagnosed chronic low back pain, degenerative disc disease, and headache. (Tr. at 291.) She assessed Claimant's physical residual functional capacity as limited to frequently lifting two pounds, occasionally lifting less than 10 pounds, standing and/or walking less than three hours, sitting less than three hours, and limited pushing/pulling. (Tr. at 294.) Nonexertionally, Dr. Hoover opined that Claimant should never climb, stoop, kneel, crawl, or crouch, could balance occasionally, and had limitations in reaching, handling, fingering, and seeing. Id.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erred in weighing the treating source opinions; and (2) the ALJ erred in evaluating Claimant's mental impairments. (Pl.'s Br. at 2, 33.)

---

[3] A GAF of 41-50 is described as "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).

The Commissioner counters that substantial evidence supports the ALJ's finding that Claimant could perform the light level work identified by the vocational expert. (Def.'s Br. at 12-19.)

Discussion

A.  Weighing Opinions of Treating Sources

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability.  See 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (2006).  Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (2006).  The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (2006).  Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's

12

conclusions are rational. <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1994).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." <u>Id.</u> §§ 404.1527(d)(2), 416.927(d)(2).

Here, the ALJ determined that the opinions of Claimant's treating physician, Dr. Hoover, and Claimant's treating psychologists, Ms. Smith and Ms. Glick, should be afforded little weight. (Tr. at 20-21.) The ALJ articulated his rationale as follows:

> The undersigned gives little weight to Dr. Hoover's opinions for the following reasons. Dr. Hoover is a treating physician. During the relevant time period Dr. Hoover attended the claimant as one of several staff physicians at the Comprehensive Care Center, Williamson Wellness Center, and Mountain Medical Center, successively (Exhibits 7F and 17F). But Dr. Hoover actually examined and treated the claimant at only slightly more than half of his primary care visits. Limitations of the severity that Dr. Hoover assessed are

13

> not supported by laboratory and clinical findings, as discussed above. Dr. Hoover's report that the claimant is experiencing severe pain is refuted by her own treatment notes, which show that the claimant continues to be satisfied with his pain relief (Exhibit 17F, pp. 1,2). Further, the claimant testified that Dr. Hoover had just prescribed a TENS unit, which helps, too.
>
> . . . .
>
> The undersigned gives little weight to the psychologists' opinions because they are not well supported by their own clinical findings or consistent with the record as whole.

(Tr. at 20-21.) The court finds that the ALJ's rationale for giving little weight to the opinions of Dr. Hoover, Ms. Smith, and Ms. Glick is consistent with the applicable case law and regulations, *supra*. Dr. Hoover's opinion is unsupported by clinical and laboratory findings; her treatment notes contain scanty clinical findings, often limited to Claimant's weight and blood pressure. (Tr. at 203-212, 300-327.) Additionally, Dr. Hoover's opinion is inconsistent with other substantial evidence, including the normal results of the November 2003 and August 2004 lumbar spine x-rays (Tr. at 187, 201, 251) and the October 2004 CT head scan, the findings and diagnosis of lumbar muscle strain by Claimant's treating neurologist, Dr. Velasquez (Tr. at 173-81), and the opinions of Drs. Egnor and Gomez that Claimant is capable of light work with nonexertional limitations. (Tr. at 151, 153, 214-15, 217.) Consequently, the prerequisites for affording controlling weight to a treating physician's opinion are not met with respect to the opinion of Dr. Hoover. See Ward v. Chater, 924 F. Supp. at

55; see also, 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (2006). Nor are these conditions satisfied relative to the opinions of the treating psychologists. The therapy notes of Ms. Smith and Ms. Glick contain few definitive findings and many redundant passages. (Tr. at 259-79.) Furthermore, the treating psychologists' opinions are contrary to substantial evidence of record, including examining psychologist Lisa Tate's opinion that Claimant's symptoms were "not significant enough to warrant a diagnosis of an anxiety disorder" (Tr. at 145-46), the opinions of Drs. Clark and Dr. Harlow that Claimant's mental impairments were not severe (Tr. at 158-59, 222), and their ratings of his functional limitations from "none" to "mild" with no episodes of decompensation. (Tr. at 168, 232.) Accordingly, the court proposes that the presiding District Judge find that substantial evidence supports the ALJ's decision to afford little weight to the opinions of Dr. Hoover and the treating psychologists.

B. Evaluating Mental Impairments

When evaluating a claimant's mental impairments, the Social Security Administration uses a special sequential analysis outlined at 20 C.F.R. §§ 404.1520a and 416.920a. First, symptoms, signs, and laboratory findings are evaluated to determine whether a claimant has a medically determinable mental impairment. §§ 404.1520a(b)(1) and 416.920a(b)(1)(2006). Second, if the ALJ determines that an impairment(s) exists, the ALJ must specify in

his/her decision the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s). §§ 404.1520a(b)(1) and (e), 416.920a(b)(1) and (e) (2006). Third, the ALJ then must rate the degree of functional limitation resulting from the impairment(s). §§ 404.1520a(b)(2) and 416.920a(b)(2) (2006). Functional limitation is rated with respect to four broad areas (activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation). §§ 404.1520a(c)(3) and 416.920a(c)(3) (2006). The first three areas are rated on a five-point scale: None, mild, moderate, marked, and extreme. The fourth area is rated on a four-point scale: None, one or two, three, four or more. §§ 404.1520a(c)(4) and 416.920a(c)(4) (2006). A rating of "none" or "mild" in the first three areas, and a rating of "none" in the fourth area will generally lead to a conclusion that the mental impairment is not "severe," unless the evidence indicates otherwise. §§ 404.1520a(d)(1) and 416.920a(d)(1) (2006). Fourth, if a mental impairment is "severe," the ALJ will determine if it meets or is equivalent in severity to a mental disorder listed in Appendix 1. §§ 404.1520a(d)(2) and 416.920a(d)(2) (2006). Fifth, if a mental impairment is "severe" but does not meet the criteria in the Listings, the ALJ will assess the claimant's residual functional capacity. §§ 404.1520a(d)(3) and 416.920a(d)(3) (2006). The ALJ incorporates the findings derived from the analysis in the ALJ's decision:

> The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s).  The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

§§ 404.1520a(e)(2) and 416.920a(e)(2) (2006).

Here, it appears that the ALJ utilized the special sequential analysis, set forth above, to evaluate Claimant's mental impairments. (Tr. at 23-24.) In reaching his conclusion about the severity of those mental impairments, the ALJ expressly considered Claimant's functional limitations. (Tr. at 24.) As required by the regulations, the ALJ's decision contains a specific finding as to the degree of limitation in each of the functional areas:

> The medical and other evidence supports no more than mild restriction of daily living, mild difficulties in maintaining social functioning, or mild difficulties in maintaining concentration, persistence or pace. . . . The record does not establish an episode of decompensation of extended duration.

(Tr. at 24.) Accordingly, the court proposes that the presiding District Judge find that substantial evidence supports the ALJ's evaluation of Claimant's mental impairments.

<u>Conclusion</u>

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge DENY Plaintiff's Motion for Judgment on the Pleadings, GRANT Defendant's Motion for Judgment on the Pleadings, AFFIRM the final decision of the Commissioner, and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Chief Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

<u>February 25, 2008</u>
      Date

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge